IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02411-PAB-NYW

KAMI COOPER,

       Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS, STATE OF COLORADO,

STEVEN OWENS,
In his individual capacity,

and

MATTHEW WINDEN,
In his individual capacity,

       Defendants.

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, Kami Cooper ("Mrs. Cooper"), by and through counsel, Finger Law, P.C., submits this First Amended Complaint and Jury Demand against the Defendants, State of Colorado, Colorado Department of Corrections ("CDOC"), Steven Owens, and Matthew Winden, and alleges:

**INTRODUCTION**

1. This is an employment discrimination, retaliation, and sex-based unequal pay action by employee Kami Cooper against her employer, the State of Colorado, Department of

**Deleted:** Defendant.

**Deleted:** Defendant

Corrections, seeking damages to redress violations of Plaintiff's rights. Defendants have failed to promote or pay Mrs. Cooper at the same rate which similarly situated males are paid, and was retaliated against for making requests for equal pay. This case is brought under the Equal Pay Act of 1963, as amended, 29 U.S.C. §§ 206(d), 215(a)(3) ("EPA"), the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as the Colorado Anti-Discrimination Act, § 24-34-402 *et seq.* ("CADA"), and the Colorado Equal Pay for Equal Work Act, § 8-5-101 *et seq.* ("CEPEWA").

**PARTIES**

2.    Plaintiff is an individual residing in Pueblo West, Colorado. She is an employee of the Colorado Department of Corrections.

3.    Defendant State of Colorado, Colorado Department of Corrections, is a political agency, a Department of the Executive Branch, of the State. Defendant at all relevant times was Plaintiff's employer within the meaning of relevant statutes. Defendant's central office is located at 1250 Academy Park Loop, Colorado Springs, Colorado, 80910.

4.    Defendant Steven Owens is the Deputy Director of Prisons overseeing Centennial Correctional Facility and the Appointing Authority over Matthew Winden. He made, authorized, or ratified the decisions to take the adverse actions against Plaintiff. His address is 6033 Copper Mountain Dr., Colorado Springs, Colorado 80918.

5.    Defendant Matthew Winden, Warden of Centennial Correctional Facility, is the delegated Appointing Authority for Centennial Correctional Facility. He was Plaintiff's Appointing Authority and made the decision to take adverse actions alleged herein. His address is

Deleted: Defendant has

Deleted: and

Formatted: Font: Italic

1071 S McCulloch Way, Pueblo West, Colorado 81007.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331.

7.      This Court has specific jurisdiction under the EPA, 29 U.S.C. § 206(d).

8.      This Court has specific jurisdiction under Title VII, 42 U.S.C. § 2000(e).

9.      Mrs. Cooper brings this action to recover damages caused by DOC's violations of federal law under Title VII of the Civil Rights Act of 1964 as amended and the Equal Pay Act of 1963, as amended.

10.     This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices complained of herein occurred in the District of Colorado.

12.     At all relevant times, Defendant CDOC was covered by the definitions of "employer" set forth in 29 U.S.C. § 203(d) of the Fair Labor Standards Act, of which the EPA is a part, Title VII, the CEPEWA, and CADA.

13.     Defendant Owens is a person within the meaning of the EPA.

14.     Defendant Winden is a person within the meaning of the EPA.

## ADMINISTRATIVE PROCEDURE AND EXHAUSTION

15.     Mrs. Cooper timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (and with the Colorado Civil Rights Division) within 300 days and 180 days, respectively, of the alleged adverse employment acts.

**Deleted:** conduct

**Deleted:** , and the relevant records and witnesses are located in,

**Formatted:** Indent: First line:  0.5", Tab stops: Not at  0.5"

16.     The Colorado Civil Rights Division issued a Notice of Right to Sue on June 9, 2021.

17.     This matter was filed within 90 days of receipt of said letter.

18.     This matter is timely filed.

19.     The Plaintiff requested a Notice of Right to Sue from the EEOC at the same time as the request to the CCRD, in March 2021. The EEOC is processing the request but has not yet issued the Notice of Right to Sue due to delays in processing associated with Covid-19.

20.     Because of the 90-day deadline of the Notice of Right to Sue from the CCRD, this suit is filed to meet this deadline.

**Deleted:**

## **GENERAL ALLEGATIONS**

21.     The foregoing allegations are realleged and incorporated herein by reference.

22.     Mrs. Cooper is female and therefore is a member of a protected class based on her sex.

23.     Mrs. Cooper works as a Correctional Security Officer I for the CDOC. Her work location is in Canon City, Colorado at Centennial Correctional Facility ("CCF").

24.     The State of Colorado employs approximately 30,000 full time employees in varying capacities in 19 separate Departments.

25.     The Colorado Department of Corrections is the state agency responsible for operating and managing Colorado's correctional facilities and overseeing offenders in the community corrections programs and on parole.

26.     DOC operates about 20 correctional facilities throughout the state. It employs approximately 6,400 employees, the majority of which are in enforcement and protective services,

and some who are in administrative roles (such as Mrs. Cooper).

27.     Mrs. Cooper began employment for Defendant CDOC in or about May 2004 as a Correctional Security Officer I ("CO I"). This is a common and standard position.

28.     Mrs. Cooper has therefore been an employee of the Defendant CDOC for 18 years as of May 2021.

29.     In 2008, after approximately 4 years, Mrs. Cooper accepted a change in duties and working title to Tool Control Officer I.

30.     For purposes of pay and rank, Mrs. Cooper was still considered a Correctional Security Officer I, despite the change in duties and working title.

31.     Her salary as of 2020 was $4,593 per month, or $55,116 per year.

32.     Mrs. Cooper's salary is reflective of a Correctional Officer I with 5-10 years of experience.

33.     Mrs. Cooper's salary is not reflective of a Tool Control Sergeant with nearly 20 years of experience.

34.     Mrs. Cooper has never been offered a pay increase for performing the duties of Tool Control, despite requesting such.

35.     The position description for the Tool Control Officer position held by Ms. Cooper, as of 2017, in part, describes the duties of the position as follows: Position conducts inspections of all tool accountability areas to ensure the facility tools and equipment are maintained in clean and functional manner, conducts periodic audits of all documentation related to tool inventory and issue and ensures that each accountability areas meets the standards set by policy. Position is

responsible for creating and maintaining sound practice for the inspection, acquisition and replacement of tools and equipment as the need arises and responsible for maintaining accountability of all tools and equipment within the facility through periodic inspection and audit of storage areas. Maintains databases and inventories to accomplish this.

36. Each prison in the state maintains one Tool Control position.

37. Each facility's Tool Control position has the exact same duties assigned.

38. The Tool Control position is responsible for the handing out, logging, and accountability for tools in the facility.

39. At Centennial, where Mrs. Cooper works, there are 4,949 tools and 1,846 pieces of equipment for which she is responsible for tracking.

40. In addition, Mrs. Cooper is responsible for approximately 16 facility vehicles as the Vehicle Coordinator.

41. In addition, Mrs. Cooper is responsible for 297 radios as the Radio Coordinator.

42. For many years Mrs. Cooper was the only employee at Centennial Correctional Facility who was assigned to Tool Control Duties. She was therefore in a highly specialized role.

43. Mrs. Cooper was qualified and continues to be qualified for the position.

44. Mrs. Cooper has never received any disciplinary or corrective actions.

45. Pursuant to state regulation and policy, CDOC evaluates its employees' performance annually and at a mid-year point.

46. The standardized evaluation ranks employees on six competencies and provides an overall rating as well. The ratings are on a numerical 1-3 scale, with 1 being unsatisfactory

performance, 2 being satisfactory performance, and 3 being exemplary performance.

47.     Statistically, level 3 evaluations are rare.

48.     Level 3 evaluations must also receive additional supervisory approval before being issued and must be supported with a statement from a supervisor.

49.     Mrs. Cooper's evaluations between 2008 and 2020 were regularly level 2's with many level 3's as well.

50.     For instance, Mrs. Cooper earned a level 3 overall rating in 2009, her first full year as a Tool Control Officer.

51.     Mrs. Cooper again earned a level 3 evaluation again in 2011. In the narrative comments, her supervisor at the time, Todd Rundle, wrote that "CO Cooper's approach to Tool Control duties set the standard in this area. Her demeanor and work ethics are above reproach."

52.     The narrative also stated that Mrs. Cooper had saved the facility over $20,000 just on one project assigned to her.

53.     Mrs. Cooper again earned a level 3 evaluations in 2013, 2014, 2015, 2016, 2017, 2018, 2019, and 2020 (evaluations for calendar year 2021 will not be issued until April 2022).

54.     Mrs. Cooper's performance evaluation in 2019-2020 noted that "CO Coopers (sic) display of dedication, job knowledge, communication, interpersonal skill, and customer service have earned her a Level Ill rating. Ms. Cooper is always a pleasure to work with and supervise. Her upbeat, can do attitude is infectious and has earned respect from her p[e]ers. Ms. Cooper is not only performing at the level of a Sergeant in her job duties as the tool control specialist at CCF, she has taught and is still teaching the CSP COII's (Coor/Yth Clin Sec Off II) (Sergeant's) how to

conduct their job duties, and has the job responsibilities of a Sergeant. I believe CO Cooper should be promoted to Sergeant in that position, because of her job knowledge, experience, interpersonal skill, customer service and also to conform to the status quo of the other facilities in the Canon City area."

55.     This review was signed by Ms. Cooper's supervisor, Russell Adamic, and approved by reviewer Randy Cordova and Appointing Authority Sean Pruitt.

56.     The 2008-2020 evaluations were issued by several different supervisors and reviewers.

57.     In addition to positive performance evaluations she has received, Mrs. Cooper has earned several awards and commendations.

58.     Mrs. Cooper has been issued Certificates of Appreciation from CDOC.

59.     Mrs. Cooper has been named Employee of the Quarter.

60.     Mrs. Cooper has been named Employee of the Year for 2014-2015.

61.     Mrs. Cooper has received numerous medals of commendation.

62.     Mrs. Cooper has been specifically commended for received 100% perfect scores on audits of her tool control processes.

63.     Mrs. Cooper acted as the only Correctional Officer I in the state who was performing all duties of the Tool Control positions.

64.     When Mrs. Cooper asked her superiors about being reclassified as a Correctional Officer II because all of the other Tool Control positions were at level II, she was told that there was nothing which could be done.

65.     In 2012, CCF South (also known as Colorado State Penitentiary II) was closed.

66.     After the closure, Mrs. Cooper performed each and every duty of a Tool Control Sergeant.

67.     From 2012 to 2020, Mrs. Cooper had no help or assistance in the Tool Control duties.

68.     For over 7 years, Mrs. Cooper trained a total of 7 Sergeants who were promoted from Officer I or regular Sergeant to Tool Control Sergeant.

69.     After CSP II closed, Mrs. Cooper requested that her duties and position be reviewed for reclassification as Tool Control Sergeant, CO II.

70.     These requests were all denied.

71.     Mrs. Cooper has presented her supervisors, Associate Wardens, and Warden with research, a proposal letter, and duty descriptions in seeking a promotion or reclassification to Sergeant/CO II.

72.     While Mrs. Cooper's direct supervisors, such as Major Robert Houston,

73.     Mrs. Cooper applied to promote to the position of Sergeant, Correctional Officer II ("CO II") four times since 2014: February 10, 2014; October 16, 2015; October 6, 2016; and June 13, 2017.

74.     Despite Mrs. Cooper's successful performance, she was not selected for any of the four promotional opportunities.

75.     On the first three applications, Mrs. Cooper was deemed not in the top six candidates.

76.     The maximum pay for a CO II is higher than that of a CO I.

77.     At all other CDOC facilities except one (Limon), the comparator, the employee performing Tool Control duties is a Sergeant, CO II.

78.     The typical salary for these Tool Control Sergeants/CO II's was between $5,063 per month and $5,549 per month.

79.     Mrs. Cooper has worked in the Tool Control position for longer than nearly all of these comparators yet makes substantially less than all of them ($500-$1,000 per month).

80.     For a year or more, the CDOC maintained on paper a Tool Control Sergeant CO II position which was vacant.

81.     Mrs. Cooper regularly asked her supervisor and supervisory chain of command if she could be considered for either a promotion, application, or reclassification to the position of Tool Control Sergeant CO II.

82.     Mrs. Cooper's requests were denied or ignored.

83.     Specifically, Mrs. Cooper was told by her Warden and Associate Wardens that "nothing can be done for you."

84.     Only once a female leader was assigned to the facility, Associate Warden Stephanie Sandoval, was Mrs. Cooper specifically told that there was a process to address her situation of misclassification of position and Sandoval encouraged Mrs. Cooper to re-request a promotion.

85.     Mrs. Cooper, for over 7 years, operated without any Sergeant above her to act as a team leader or immediate supervisor. Instead, Mrs. reported to Captains (Correctional Officer IV's) or Majors (Correctional Officer V's).

86.     On December 17, 2019, following Mrs. Sandoval's advice, Mrs. Cooper met with Warden Matthew Winden to discuss her requests.

87.     Warden Winden claimed that he had spoken to Deputy Director of Prisons Steve Owens who authorized him to deny Mrs. Cooper's requests.

88.     Warden Winden also stated that Mrs. Cooper "shouldn't want [the promotion] because [she] didn't earn it."

89.     Warden Winden was condescending through this meeting and barked at Mrs. Cooper to "speak" after he told her that she did not earn it.

90.     Mrs. Cooper asked Winden why there was a policy in place, AR 1450-09B Request for Classification, if it would not be used or considered.

91.     Warden Winden became angry and stated that they are required to have a process for it because APA requires it, but that they don't have to follow it.

92.     Mrs. Cooper then asked Winden if she could have his decision and reasons in writing.

93.     Warden Winden again became angry and stated he would not put anything in writing because that meant that Mrs. Cooper was trying to "document" him.

94.     Warden Winden said that if he put anything in writing it would be to the effect of "because I said so."

95.     Warden Winden said that because Mrs. Cooper had asked for his decision in writing, the meeting was over.

96.     Warden Winden slid Mrs. Cooper's proposal for reclassification back across the

table to her unsigned.

97.     Mrs. Cooper asked if he needed to send any of the paperwork or AR (administrative regulation) forms to central office. Winden stated no.

98.     Mrs. Cooper then asked Winden a second time to sign the form, at least indicating a denial, because her previous requests had been denied without a paper trail.

99.     Mrs. Cooper slid the paperwork back across the table to the Warden. The Warden then checked the "denied" box and signed the form.

100.    No reason has ever been presented to Mrs. Cooper.

101.    Though CDOC claims that there was never a vacant Tool Control Sergeant CO II position available, at the time of the meeting with Winden, after that meeting occurred, an employee was promoted from another facility to become Tool Control Sergeant over Mrs. Cooper.

102.    This individual was a male.

103.    This individual had no experience in Tool Control and Mrs. Cooper had to train him to perform his duties.

104.    After she began training him, he was informed to not listen to Mrs. Cooper because CDOC could not have an appearance that an officer was training a Sergeant.

105.    According to regulation under the State Personnel statutes, if job duties change for an employee of the state, he or she may request re-classification to a proper position based on the job duties actually performed.

106.    Mrs. Cooper has demonstrated that she is not only qualified to perform the duties of a Tool Control Officer I, but also of a Tool Control Sergeant (Officer II).

107.    Mrs. Cooper has requested and been denied promotion/reclassification to an Officer II position.

108.    The majority of the Tool Control Sergeants are male.

109.    Mrs. Cooper was performing substantially equivalent work to others (males) not in her protected class in a job requiring equal skill, effort, and responsibility.

110.    The jobs were performed under similar working conditions.

111.    In 2019, Mrs. Cooper filed a complaint with the State Personnel Board alleging discrimination based on sex for denial of promotional opportunity.

112.    Because the case did not involve a claim of wrongful disciplinary action or wrongful termination under the State Personnel Board statute and rules, Mrs. Cooper's complaint was considered discretionary rather than mandatory as to whether a hearing would be granted.

113.    The Board in its discretion declined to set a hearing on the complaint.

114.    On November 30, 2020, Mrs. Cooper filed a Charge of Discrimination with the EEOC and the CCRD.

115.    In its Position Statement submitted to the EEOC, Defendants took the position that Mrs. Cooper's salary was "above the midpoint salary range of a Correctional Officer I."

116.    Defendants' position requires using the class of all Correctional Officer I's, which, due to numerosity and Mrs. Cooper's many years of experience, places her above a midpoint.

117.    Defendants' position, and an internal memo, also takes the position that Sergeants are work leads, and since Mrs. Cooper does not lead the work of others, she cannot be a Sergeant.

118.    This is circular logic designed to frustrate the equal terms and conditions of

**Deleted:** the Defendant

**Deleted:** Defendant's

**Deleted:** Defendant's

employment and equal opportunity owed to Mrs. Cooper under the law.

119.    Among only the employees working in similarly situated Tool Control positions, Mrs. Cooper is the lowest or second to lowest in salary.

120.    Because the Defendant CDOC has engaged in this unlawful conduct since at least 2012, Mrs. Cooper has lost not only on the current promotional position of Correctional Officer II, but also any future promotions she may have become eligible for in the nine years since she began working in a Sergeant's role.

**FIRST CLAIM FOR RELIEF**

(Refusal to Promote under Title VII, 42 U.S.C. § 2000e *et seq.* against CDOC)

121.    The foregoing allegations are realleged and incorporated herein by reference.

122.    Mrs. Cooper is female and as such is a member of a protected class based on her sex.

123.    At all relevant times, Defendant was an employer within the meaning of and subject to Title VII.

124.    Mrs. Cooper was qualified for the position sought, as she was already performing the duties of a Tool Control Sergeant.

125.    Mrs. Cooper suffered an adverse employment action when she received regular denials of promotion and refusals to reclassify her position, both verbally and in writing, and both formally and informally.

126.    Most recently, on December 17, 2019, Warden Winden denied Mrs. Cooper's request for promotion/reclassification.

PAGE **14** OF **23**

127.   CDOC treated other, similarly-situated employees outside of Mrs. Cooper's protected classes more favorably, by assigning or promoting males to Sergeant/Correctional Officer II positions performing the same duties.

128.   The other, similarly-situated employees received correspondingly higher pay associated with the level II positions as compared to Mrs. Cooper's level I position.

129.   Title VII makes it unlawful for an employer to limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee, because of such individual's protected class(es).

130.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**SECOND CLAIM FOR RELIEF**
(Refusal to Promote under the Colorado Anti-Discrimination Act, § 24-34-402 *et seq.* against CDOC)

131.   The foregoing allegations are realleged and incorporated herein by reference.

132.   At all relevant times, Defendant was an employer within the meaning of and subject to the Colorado Anti-Discrimination Act.

133.   Mrs. Cooper suffered an adverse employment action when she received regular denials of promotion and refusals to reclassify her position, both verbally and in writing, and both formally and informally.

> Moved (insertion) [2]

134.   Mrs. Cooper was qualified for the position sought.

135.   Mrs. Cooper was denied any promotion or re-classification of her position to Correctional Officer II/Tool Control Sergeant.

136.   The circumstances give rise to an inference of unlawful discrimination based on sex.

### THIRD CLAIM FOR RELIEF
(Discrimination in Terms and Conditions of Employment under Title VII, 42 U.S.C. § 2000e *et seq.* against CDOC)

137.   The foregoing allegations are realleged and incorporated herein by reference.

138.   Plaintiff was subjected to adverse terms or conditions of employment.

139.   Those adverse terms included, but were not limited to, unequal and lower pay, and unequal and lower rank.

140.   Conversely, the adverse terms included a requirement to perform the duties and responsibilities of a higher position despite being classified to a lower position.

141.   Similarly situated males were not subjected to such adverse terms or conditions.

### FOURTH CLAIM FOR RELIEF
(Discrimination in Terms and Conditions of Employment under the Colorado Anti-Discrimination Act, § 24-34-402 *et seq.* against CDOC)

142.   The foregoing allegations are realleged and incorporated herein by reference.

143.   Plaintiff was subjected to adverse terms or conditions of employment.

144.   Those adverse terms included, but were not limited to, unequal and lower pay, and unequal and lower rank.

145.   Conversely, the adverse terms included a requirement to perform the duties and responsibilities of a higher position despite being classified to a lower position.

146.   Similarly situated males were not subjected to such adverse terms or conditions.

Moved (insertion) [3]
Moved (insertion) [4]
Moved (insertion) [5]
Formatted: Normal

**FIFTH CLAIM FOR RELIEF**

(Retaliation for Engaging in Protected Activity under the Colorado Anti-Discrimination Act, § 24-34-402 *et seq.* against CDOC)

147.    The foregoing allegations are realleged and incorporated herein by reference.

148.    Plaintiff made protected outcries of discrimination when she complained internally of unequal pay/failure to promote in and before the December 17, 2019, meeting.

149.    Plaintiff also filed a State Personnel Board complaint on December 27, 2019, asserting discrimination based on sex.

150.    Plaintiff also originally filed this instant litigation on September 7, 2021.

151.    Plaintiff has been retaliated after that point in time by the continued refusal to promote or reclassify her position.

152.    Plaintiff has also been retaliated against after that point in time of the initial complaints in that she was passed over for promotion and a new employee was recently assigned to become a Tool Control Sergeant above her.

153.    Plaintiff has, since the filing of this suit, been reassigned from Tool Control to regular housing and/or security assignments.

154.    Defendant Warden Matthew Winden has indicated his animus toward Mrs. Cooper by intentionally refusing to consider her for equal employment opportunity and telling her that he would never promote her.

155.    The negative and/or adverse actions described above by Defendant were because of Plaintiff's complaints of discrimination and engaging in protected activity.

Deleted: Title VII and

Deleted: Plaintiff re-alleges and incorporates all paragraphs above

Formatted: Indent: First line: 0.5", Space After: 0 pt, Line spacing: Double, Tab stops: Not at 1"

Deleted: Defendant's

156.   The reasons provided by DOC for the discrimination are pre-textual, false, defamatory, reckless, and baseless.

157.   The acts of DOC were intentional and knowing concerning the violation of Plaintiff's rights under CADA and specifically the prohibition against discrimination.

158.   Defendant has had ample opportunity to correct and modify the wrongful conduct at various stages, refused to change course despite evidence and to the contrary is increasing the humiliation and subjecting Mrs. Cooper to mental torment.

**SIXTH CLAIM FOR RELIEF**
(Retaliation for Engaging in Protected Activity under Title VII, 42 U.S.C. § 2000e *et seq*. against CDOC)

159.   The foregoing allegations are realleged and incorporated herein by reference.

160.   Plaintiff has engaged in protected activity by complaining of unequal treatment and requesting re-classification of her position on or before December 17, 2019 and prior thereto.

161.   Plaintiff has engaged in subsequent protected activities, including the filing of this litigation.

162.   Plaintiff has been retaliated after that point in time by the continued refusal to promote or reclassify her position.

163.   Plaintiff has also been retaliated against after that point in time of the initial complaints in that she was passed over for promotion and a new employee was recently assigned to become a Tool Control Sergeant above her.

164.   Plaintiff has, since the filing of this suit, been reassigned from Tool Control to regular housing and/or security assignments.

165.   Defendant Warden Matthew Winden has indicated his animus toward Mrs. Cooper by intentionally refusing to consider her for equal employment opportunity and telling her that he would never promote her.

166.   The negative and/or adverse actions described above by Defendant were because of Plaintiff's complaints of discrimination and engaging in protected activity.

167.   The reasons provided by DOC for the discrimination are pre-textual, false, defamatory, reckless, and baseless.

168.   The acts of DOC were intentional and knowing concerning the violation of Plaintiff's rights under Title VII and specifically the prohibition against discrimination.

169.   Defendant has had ample opportunity to correct and modify the wrongful conduct at various stages, refused to change course despite evidence and to the contrary is increasing the humiliation and subjecting Mrs. Cooper to mental torment.

**SEVENTH CLAIM FOR RELIEF**
(Violation of the Equal Pay Act 29 U.S.C. § 206(d)(1) against CDOC and Steven Owens and Matthew Winden)

170.   The foregoing allegations are realleged and incorporated herein by reference.

171.   The Defendant is an employer subject to the Equal Pay Act of 1963.

172.   Mrs. Cooper was performing work in a position requiring equal skill, effort, and responsibility under similar working conditions to others.

173.   Mrs. Cooper was performing work that was substantially equal to one or more males in the position of Sergeant/Correctional Officer II.

174.   Mrs. Cooper was performing work substantially equal to at least one or more male

Moved up [3]: <#>Mrs.

Deleted: <#>Due to DOC's blatantly illegal acts,

Moved up [4]: <#>Mrs.

Moved up [5]: <#>THIRD CLAIM FOR RELIEF¶

Deleted: <#>Cooper seeks damages for back pay, front pay, general and special damages for lost compensation and job benefits, promotion to the promotional position, compensatory damages, damages for emotional distress, attorneys' fees and costs pursuant to 42 U.S.C §2000e-5, and interest, in an amount to be determined at trial. The circumstances also warrant an award of exemplary damages under 42 U.S.C. §2000e-5. Complainant reserves the right to request any other make-whole remedies or remedies that the Court deems justified and proper to mitigate the damages done to

Deleted: <#>Cooper. ¶

Deleted: Plaintiff re-alleges and re-incorporates all paragraphs above…

employees.

175.    The working conditions were in fact or essentially the same.

176.    Mrs. Cooper was paid less than one or more of the employees of the opposite sex in the similarly situated roles.

177.    Defendants either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

178.    Defendant Matthew Winden made the decision to take the adverse action complained of.

179.    Defendant Steven Owens either authorized or ratified Winden's decision.

180.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits.

**Deleted:** Defendant's

**EIGHTH CLAIM FOR RELIEF**
**(Retaliation in Violation of the Equal Pay Act 29 U.S.C. § 215(a)(3) against CDOC and Steven Owens and Matthew Winden)**

181.    The foregoing allegations are realleged and incorporated herein by reference.

182.    Defendants have discriminated against Plaintiff by stripping her of her duties as the Tool Control officer and re-assigned her to regular housing and/or security duties.

183.    Plaintiff has, since the filing of this suit, been reassigned from Tool Control to regular housing and/or security assignments.

184.    Defendant Warden Matthew Winden has indicated his animus toward Mrs. Cooper by intentionally refusing to consider her for equal employment opportunity and telling her that he would never promote her.

185.    Defendant Winden made the decision to take the adverse action complained of.

186.    Defendant Owens authorized or ratified the decision.

187.    The negative and/or adverse actions described above by Defendants were because of Plaintiff's complaints of discrimination and engaging in protected activity.

**NINTH CLAIM FOR RELIEF**
(Discrimination in Violation of the Colorado Equal Pay For Equal Work Act §8-5-102(1) against CDOC)

188.    The foregoing allegations are realleged and incorporated herein by reference.

189.    Plaintiff has been performing work that was substantially equal to one or more male Sergeant/Correctional Officer IIs considering the skills, effort, and responsibilities of that role.

190.    One or more male Correctional Officer IIs were paid more than Plaintiff under such circumstances in violation of the Colorado Equal Pay for Equal Work Act, C.R.S. § 8-5-102(1).

191.    CDOC was not acting in good faith in setting Plaintiff's salary and in denying her requests for promotion and/or equal pay, refusing to timely remedy the disparity of which it was well aware, and ultimately failing to pay Plaintiff an equitable salary.

192.    As a direct and proximate result of CDOC's actions, Plaintiff has suffered damages, including lost wages and benefits.

**TENTH CLAIM FOR RELIEF**
(Retaliation in Violation of the Colorado Equal Pay For Equal Work Act §8-5-102(2(c)) against CDOC)

193.    The foregoing allegations are realleged and incorporated herein by reference.

194.    The foregoing allegations are realleged and incorporated herein by reference.

195.    Defendant has discriminated against Plaintiff by stripping her of her duties as the

Tool Control officer and re-assigned her to regular housing and/or security duties.

196.   Plaintiff has, since the filing of this suit, been reassigned from Tool Control to regular housing and/or security assignments.

197.   Defendant's Warden Matthew Winden has indicated his animus toward Mrs. Cooper by intentionally refusing to consider her for equal employment opportunity and telling her that he would never promote her.

198.   The negative and/or adverse actions described above by Defendant were because of Plaintiff's complaints of discrimination and engaging in protected activity.

**Formatted:** Indent: First line: 0.5", Tab stops: 1", List tab

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and award Plaintiff damages as established by the fact finder:

1.   Economic damages, including without limitation back wages and benefits back-looking three years and through the end of this litigation;

2.   A pay increase and promotion moving forward;

3.   Liquidated damages;

4.   Compensatory damages, including without limitation, special damages and damages for loss of reputation, loss of opportunity for professional growth, loss of opportunity for immediate and future promotion; emotional distress, pain and suffering, and mental anguish;

5.   Punitive damages against the individual defendants;

6.   Injunctive and/or declaratory relief;

7.   An award of reasonable attorneys' fees and costs, including expert witness fees, as

appropriate;

8.      Pre-judgment and post-judgment interest as provided for under the law from the earliest possible date and at the highest lawful rate; and

9.      Such other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted this 1st day of March, 2022.

LEVENTHAL | LEWIS
KUHN TAYLOR SWAN PC

/s/ Casey J. Leier
Casey J. Leier
3773 Cherry Creek N. Dr., Ste, 710
Denver, CO 80209
Telephone:   (720) 699-3000
Email:       cleier@ll.law
*Attorney for Plaintiff*

Plaintiff's Address:
1124 West Shenandoah Dr.,
Pueblo West, CO 81007