### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02411-PAB-NYW

KAMI COOPER,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTION, STATE OF COLORADO,

    Defendant.

---

### REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT
---

Plaintiff Kami Cooper, by and through her counsel, hereby respectfully files this Reply in Support of her Motion for Leave to file her First Amended Complaint and would show as follows:

### BACKGROUND AND NATURE OF PROPOSED AMENDMENTS

This case is about a female employee of the Colorado Department of Corrections who is seeking equal pay and rank reflective of the work that she has performed. Plaintiff served in a specialized and rare position called "Tool Control Officer." The Department of Corrections, through the state's personnel classification system, generally categorizes its employees as Correctional Officer I, II, III, IV, and V. These positions correlate to the paramilitary rankings of Officer, Sergeant, Lieutenant, Captain, and Major. During the relevant time period, the Department hired only one or two employees per facility to serve in tool control positions. Tool Control employees were generally categorized as Officer II's, or Sergeants. Plaintiff was categorized as an Officer I, despite performing all the duties of an Officer II.

In the original complaint, Plaintiff alleged three claims. Claim One was for "Denial of Promotion and Unequal Terms and Conditions of Employment under Title VII and the Colorado Anti-Discrimination Act." Claim Two was for "Retaliation for Engaging in Protected Activity under Title VII and the Colorado Anti-Discrimination Act." Claim Three was for "Violation of the Equal Pay Act, 29 U.S.C. § 206."

In the First Amended Complaint, Claim One is broken out into four claims, to separate and clarify the adverse action and the statutory basis. Therefore, under the First Amended Complaint, Plaintiff asserts (1) Refusal to Promote under Title VII; (2) Refusal to Promote under CADA; (3) Unequal Terms and Conditions under Title VII; (4) Unequal Terms and Conditions under CADA. In other words, no new claim is added, but the original claim has been separated into the two statutory bases and into a "promotion" component and a "unequal terms" component. The statutes each make clear that both a refusal to promote and providing unequal terms or conditions to employees based on sex are independent bases for claims.

Likewise, the original Claim Two asserted Retaliation under CADA and Title VII. Under the proposed First Amended Complaint, this claim would be separated into (5) Retaliation under CADA; and (6) Retaliation under Title VII. Defendant does not object to Claims One, Three, or Six, but objects to Claims Two, Four, and Five on the ground that the claims are barred by the Eleventh Amendment.

In addition, Plaintiff seeks to amend her Equal Pay claim, originally Claim Three, to include the individual actors, Deputy Prison Director Steve Owens, and Warden Matthew Winden, for their roles in denying Plaintiff equal pay. Defendant objects on the basis that "Plaintiff must choose either to file a claim against CDOC or the individuals, but not both."

The original Claim Three was also amended to separate and clarify that the Equal Pay Act, 29 U.S.C. § 206, contains provisions under subsection (d) (1) for violation of equal pay for equal work, and under § 215 (a) (3) for retaliation. Thus, the original Claim Three alleging a violation of the EPA is clarified in the Seventh Claim and Eighth Claim with that separation. Defendant does not object to this clarification.

Finally, a Ninth and Tenth Claim are added, both against the CDOC and both on the basis of the Colorado Equal Pay for Equal Work Act (EPEWA), one for discrimination based on sex and one for retaliation. Defendant objects to both of these claims on the basis of an asserted Eleventh Amendment bar.

## REPLY TO DEFENDANT'S ARGUMENTS

I. **Defendant Position that CADA Claims are Barred by Eleventh Amendment is Not Established Law.**

   a. **Case Law Does Not Support Defendant Position as Claimed.**

Defendant cites two cases to support its contention that any claims under the Colorado Anti-Discrimination Act in federal court are barred by the Eleventh Amendment: *Ulrich v. Dep't of Hum. Servs.*, No. 20-CV-03810-WJM-KMT, 2022 WL 223212; and *Moudden v. Univ. of Colorado Boulder*, No. 118CV02514WJMSKC, 2019 WL 7833974.

*Ulrich* is not binding and has little persuasive value. It is not a published opinion. It is a magistrate recommendation. It involved a pro se plaintiff who did not comprehensively contest the defendants' F.R.C.P. 12(b)(1) Motion to Dismiss. The magistrate's analysis of the Eleventh Amendment issue, therefore, was not extensive and essentially concluded that "Colorado has not waived its immunity with respect to any of the claims asserted here." *Ulrich* at *3. No analysis of

*how* Colorado did or did not waive immunity occurred in this case.

Likewise, *Moudden* is an unpublished decision and is not binding. The issue of the Eleventh Amendment bar was not contested by the plaintiff and thus the court had no reason to analyze the issue. *Moudden* at *8.

In contrast, in *Benton v. Town of S. Fork*, 587 F. App'x 447 (10th Cir. 2014), which Defendant does not cite, a police officer brought an action under Title VII and CADA against a town, various individuals, and the Colorado State Patrol, the Tenth Circuit reviewed an appeal by a pro se plaintiff. There, the court analyzed the plaintiff's claims for a possible Eleventh Amendment bar. While the lower court concluded that the Eleventh Amendment barred the plaintiff's claims and dismissed them, the Tenth Circuit did not adopt the district court's analysis. Instead, the Tenth Circuit reached the elements of a CADA claim. *Id*. at 451-53. While the plaintiff's claims of race and age discrimination were ultimately dismissed, they were dismissed on different grounds because the plaintiff had failed to meet the elements of a CADA claim. *Id*.

There is a reason that Defendant cited only to *Ulrich* and *Moudden*. Outside of these cases, plus *Benton*, there does not appear to be any other cases in the District of Colorado or Tenth Circuit which are directly on point regarding the issue of whether Colorado has waived immunity for purposes of CADA claims in federal court. Thus, further analysis is warranted.

    **b. Other Key Factors Support a Waiver.**

Other factors indicate a waiver of state immunity. Specifically, the Court should look to the mirroring structure of the Colorado Civil Rights Division and the Equal Employment Opportunity Commission, and their operating statutes.

The State of Colorado has voluntarily entered into a workshare agreement with the Equal

Employment Opportunity Commission. This workshare agreement is reviewed and renewed on an annual or regular basis. The workshare agreement provides federal funds to the state for investigations and other work performed by Colorado on behalf of the EEOC. The agreement is founded on the principle that the legislature of Colorado made a decision to pass the Colorado Anti-Discrimination Act, which mirrored the language and purpose of Title VII. The legislature also created and enabled the Colorado Civil Rights Commission, or what is known as a Fair Employment Practices Agency ("FEPA"), which was a voluntary act.

It would make little logical sense that the State of Colorado would create a set of statutory rights for its citizens, mirroring federal rights, but then claim immunity from those same rights. When a potential charging party contacts either the EEOC or CCRD, they are told that they may file a charge of discrimination with either entity. There is no process by which potential charging parties are noticed that this initial choice would later limit the venue in which they may later file a civil suit. There also is no notice to potential charging parties that they would need to visit the other agency once a charge has been filed with the other.

Likewise, the statute defining "employer" for purposes of determining liability, C.R.S. § 24-34-401 (3), specifically notes that: "'Employer' means *the state of Colorado* or any political subdivision, commission, department, institution, or school district thereof, and every other person employing persons within the state…". (emphasis added). A similar analysis was performed by the Colorado Supreme Court in *Elder v. Williams*, 477 P.3d 694 (Colo. 2020), with respect to whether the Colorado Governmental Immunity Act ("CGIA") barred CADA claims. There, the court first determined that the CGIA and CADA did not directly address the issue in the language of either statute. Then, the court applied the following analysis. "In construing a statute, we seek

to ascertain and give effect to the General Assembly's intent. [citing to *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016]." *Elder* at 698. "In addition, we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results." *Id*. Finally, if the statute contains any ambiguity, "we may look to the legislature's intent, the circumstances surrounding the statute's adoption, and the possible consequences of different interpretations to determine the statute's proper construction." *Id*.

The court concluded that the legislative intent was not that governmental entities were immune from suit, because CADA was a statutory creation for new causes of action and not a codification of existing rights in common law or lying in tort. ("Neither the CRA nor CADA has origins in the common law.") *Id*. at 699. Here, the statutory scheme when reviewing the CADA statutes in their entirety indicate a clear system for addressing employment discrimination mirroring and complementing Title VII. For instance, § 24-34-405 (3) (d) (IV) of CADA states that, "If a plaintiff asserts claims of intentional discriminatory or unfair employment practices under this article and under applicable federal anti-discrimination laws, the plaintiff may recover relief under this section only once for the same injuries, damages, or losses." This indicates that the two laws are contemplated to be applied, in some cases, together, and that in doing so, the legislature provided a cap of damages that is only logical if the statutes are intended to cover identical or near-identical harms.

Because Plaintiff's state law claims are brought to this court under supplemental jurisdiction, this Court must apply "the substantive law of the forum state and reach the same decision … that [the] state's highest could would." *Lytle v. City of Haysville, Kan.*, 138 F.3d 857,

868 (10th Cir.1998). There is no harm or prejudice to Defendant in bringing these claims through an Article III court, because this Court will utilize the same standards. Meanwhile, there would be clear prejudice to Plaintiff to needlessly bring another action on similar issues through the state court system of Colorado. It would cause waste of judicial resources and economy and excess cost to the parties.

### c. The Equal Pay for Equal Work Act Analysis is Akin to the CADA Analysis.

The Colorado Equal Pay for Equal Work Act ("EPEWA") was passed by the Colorado legislature in 2019 and took effect January 1, 2021. As such, there is little case law with any precedential value that can be considered, and no caselaw was found on the issue of 11th Amendment Immunity. Therefore, the analysis again can look only to the statutory language, and the overall statutory scheme.

With respect to the text of the statute, §8-5-101 (5) defines "Employer" to mean "*the state or any political subdivision, commission, department*, institution, or school district thereof, and every other person employing a person in the state." (Emphasis added). This indicates an express intent by the legislature to allow the state's departments, such as the Department of Corrections, to be sued under the EPEWA.

Like the analysis above considering the mirroring statutory scheme between the CADA and Title VII, the EPEWA is a sister statute to the federal Equal Pay Act and follows a like scheme, like purpose, and mirrored language to its federal counterpart. As such, if a CADA claim may be brought in federal court against the state, then so too should an EPEWA claim.

### d. If the Court Dismisses, the Dismissal should be Without Prejudice.

In the event that this Court does move to dismiss the Plaintiff's state law claims, Proper

remedy would be to allow claims to be dismissed without prejudice so that they may be brought in state court.

## II. Plaintiff Needn't Choose Between Possible Defendants

Eleventh Amendment immunity is not absolute, and under *Ex parte Young*, a plaintiff may bring suit against individual state officers acting in their official capacities if complaint alleges ongoing violation of federal law and plaintiff seeks prospective relief. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). To invoke the exception to state's Eleventh Amendment immunity, plaintiffs must show that they are (1) suing state officials rather than state itself, (2) alleging ongoing violation of federal law, and (3) seeking prospective relief.

Here, the Plaintiff under the proposed First Amended Complaint seeks to sue two state officials, Mr. Steve Owen, Deputy Director of Prisons, and Mr. Matthew Winden, Warden, for their decisions to deny Plaintiff the requested relief of equal pay as her male counterparts and similar rank. As indicated in the Equal Pay Act, violations are of an ongoing nature for each unequal paycheck. Plaintiff to date continues to be paid at a lower rate, and therefore has an ongoing violation claim. Further, the relief sought includes prospective relief. Plaintiff remains an employee of the CDOC and requests a pay increase so that her career may continue with the Department. Thus, both individuals remain viable defendants.

It is unclear, without discovery, to know whether or to what extent the Department's executive management team was aware of or made the decisions regarding Plaintiff's denial of equal pay. There is some indication that Matthew Winden, in coordination with Owens or individually, made the decision to deny equal pay. Winden was the designated appointing authority for Plaintiff. Winden refused to submit Plaintiff's requests above to headquarters, and as pled in

the Complaint, may have "lost" or refused to even consider her requests so that headquarters was not aware of such. The discovery process would shed greater light on these issues. Until that point and without more information, Plaintiff has a reasonable basis to plead an "either-or" theory; that is, that if Winden or Winden and Owens combined to deny Plaintiff relief under the EPA without the knowledge of anyone in the executive leadership team, then CDOC as a Defendant could potentially disavow official decision-making and therefore deny liability on that basis. If so, Plaintiff's relief would be through the Warden and/or Deputy of Prisons. In the alternative, if Winden and Owens did forward the complaints from Ms. Cooper to Headquarters, they might reasonably plead qualified immunity, and the Department itself would maintain liability.

Defendant cites to only one case for the proposition that Plaintiff must choose between the Department or individuals, but not both. That case is *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 176 F. Supp. 3d 1132, 1158 (D. Colo. 2016), aff'd, 747 F. App'x 675 (10th Cir. 2018). The *Salemi* court noted that "[t]his Court has not previously ruled on this question," that "no Tenth Circuit case has ruled on this issue," and that "other courts have reached divergent conclusions." *Id*. at 1157.

The *Salemi* court in turn analyzed a Seventh Circuit case and a case from the Southern District of Illinois. In *Holliday v. WSIE 88.7 FM Radio Station*, Case No. 04-cv-0237-MJR (S.D. Ill. Dec. 7, 2005), the court dismissed the defendants in their *official* capacities but did not dismiss the defendants in their *individual* capacities. Thus, this case does not stand for the proposition that Owens and Winden must be dismissed in their individual capacities. The court specifically noted that, "As to Holliday's EPA-based claims, however, this Court is not convinced that such claims may only be asserted against an employer and not a supervisor." *Id*. at *9.

The other case the *Salemi* court relied upon is *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). In that case, the plaintiff, "for reasons unclear to [the court]," decided to name only a single official and not the department itself. *Id*. at 694. Yet, the plaintiff's attorney asserted that the claim was only against the defendant in his official capacity. This led the court to conclude that this was effectively the same as suing the department itself. When the court considered possible individual liability, it wrote that, "[t]he word "employer" is defined broadly enough in the Fair Labor Standards Act (of which the Equal Pay Act is an amendment) to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Id*. Thus, this case appears to stand for the position that a plaintiff can, in fact, name individuals, so long as those individuals had supervisory authority over the employee and was responsible for the alleged violation. Here, Plaintiff's appointing authority was Warden Winden, and his supervisor is Owens. Winden is undisputedly the individual responsible for the alleged violation in denying Plaintiff her equal pay. For these reasons, the Court should allow Matthew Winden and Steven Owens to be named as defendants in their individual capacity.

## CONCLUSION

Plaintiff's proposed amendments to the complaint are reasonable, flow naturally from the fact pattern, do not create any prejudice to Defendant in limiting defenses. Defendant does not object to the amendments which clarify Claims One, Three, and Six. Defendant's positions on the issues of adding Winden and Owens, and of maintaining mirroring state claims, are not supported by the caselaw cited once it is reviewed in depth. The amendments are not futile and Complaint respectfully requests the court grant leave as requested.

Respectfully submitted this 6th day of April, 2022.

Leventhal | Lewis
Kuhn Taylor Swan PC

/s/ Casey J. Leier
Casey J. Leier
3773 Cherry Creek N. Dr., Ste, 710
Denver, CO 80209
Telephone: (720) 699-3000
Email: cleier@ll.law
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of April, 2022, a true and correct copy of the foregoing Reply in Support of Motion for Leave to Amend was filed with the CM/ECF system which will send notification to:

Jack Patten
Senior Assistant Attorney General
Robyn Lundt
Assistant Attorney General
Employment/ Personnel and Civil Rights Unit
Attorneys for Respondent
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000
FAX: (720) 508-6032
Email: Jack.patten@coag.gov
Robyn.lundt@coag.gov

*/s/ Casey Leier*
Casey Leier